Good morning, Your Honor. My name is David Cooper. I'm pro bono amicus counsel on behalf of the petitioners. I'd like to reserve two minutes of my time for rebuttal. This case concerns claims for asylum and withholding of removal where the Board of Immigration Appeals applied the wrong legal standard and therefore remand is required. For the withholding of removal claims, there are two key undisputed facts in this case. First, Mr. Kojo and Mrs. Warang are members of a disfavored group, which is Christians and ethnic Chinese in Indonesia. The second key fact is that neither the immigration judge nor the Board of Immigration Appeals applied the disfavored group analysis. Did the Kojos raise disfavored group analysis before the BIA in their appeal to the BIA? No, and the reason for that, the main reason for that is because the sale case came after the BIA had decided this case. And the sale case, of course, is the case that applied disfavored group analysis to ethnic Chinese in Indonesia. May I ask you a question to begin? Sure. The timely application or the timely claim for asylum, I guess, is the big issue right here in this particular case, and I didn't see it in the opening brief. Are we through? No, Your Honor. I think that there are a few reasons. There are two reasons for that. The first is that there's been every opportunity to brief this issue on the other side. That is, we had a full another round of briefing, and so there's been no prejudice here from the fact that the timing issue wasn't specifically raised in the petitioner's opening brief. The second point is that we have quite a bit of law that says if you don't put it in your opening brief, we're through. That's true, although this Court has made exceptions in certain cases. And which exception do you come under? I think there are two main exceptions. One is that this is a jurisdictional issue, and jurisdictional issues, of course, can be raised by this Court or any one at any time. The second point is that the issue of this Court's jurisdiction, which is what timeliness essentially is in this case, it's a question of this Court's jurisdiction, was mentioned in the opening brief. Now, timeliness wasn't mentioned specifically, but this Court has never held that in the petitioner's opening brief, if you have to mention sort of sub-issues under jurisdiction or anything else. Let me ask you. Maybe we should create a new exception for this particular case, though, because the blue brief was so. Because, I'm sorry? The blue brief was left much to be desired. Yes. So maybe that should be another exception, huh? I mean, I think that's certainly worthwhile in a case like this when we're talking about an asylum case where there's been full briefing on the issue and therefore no prejudice. I mean, I think in a case where the government was truly sandbagged or truly had no opportunity to raise an issue, then even, you know, no matter how poor the brief, you know, there would be a potential problem there. But there really is no problem here. Not only did the government raise it in their opening briefs, but they had another full round of briefing in which to respond to the arguments that I made. The issue was addressed by the agency, isn't that correct? Yes, fully addressed. And it was fully raised before the IJ and the BIA. Before you answer so quickly, did the BIA and the IJ fully address the changed circumstances? No. Did they mention the timeliness issue? No, they did not. What I meant to say is that the issue was raised before they talked about timeliness, not that they fully addressed the issues that the peers made with regard to why they fell under the changed circumstances. Did they make that the changed circumstances or the extraordinary circumstances argument to the BIA and the IJ? Yes, they did. And that's. Let me ask you another question. Why is it that we have jurisdiction in this case anyway? Because it seems to me that we're applying law to disputed facts here. Ramadan would not be applicable in this particular instance, and so, therefore, we have disputed facts as to why and when and how your clients may have known or not known, and so we've got all kinds of facts underneath. And Ramadan was with undisputed facts and application of law to undisputed facts. Here we have disputed facts. It seems to me, then, we don't have jurisdiction, even if you did raise it in your opening brief. I don't think that's right, and I think the reason is because the BIA did not properly address the changed country conditions issue, and whether or not they actually addressed it is a question of law, not a question of disputed fact. So the first point is that since the BIA failed to properly address the issue, that should be the end of the story. This Court should not be deciding the changed country conditions issue in the first instance, and so, therefore, it does not have to get into the disputed or undisputed facts with regard to changed country conditions. The second point is that essentially the facts are undisputed here. Well, they're not really undisputed because if, in fact, I can suggest that you knew about it at a certain time and didn't file within a year therefrom, then you don't make it. And so when you knew or when you should have known or when you could have come to, then I give you a year. If you didn't make it, then the BIA, I.J., is correct. I.J. certainly talked about that. BIA did too. Well, the I.J. What the I.J. said was you did not meet timeliness because, essentially, ignorance of the asylum process is no excuse for filing late. But the I.J. did not respond at all. He did not mention the word changed country conditions. He did not mention the issue of changed country conditions. Neither did the BIA, which said specifically, which said just generally there's no extraordinary or changed circumstances or just the general statutory test for whether or not you fall within the exception. So neither, actually, of the I.J. nor the BIA addressed whether or not, one, there were changed country conditions, two, when those changed country conditions were, and, three, whether or not the amount of time after those changed country conditions was reasonable. The timeliness issue doesn't apply to your withholding claim. That's right. So for that, you have to, you can either get withholding on the, you have to apply the heightened standard. Yes. And past persecution or fear of future persecution. That's right. Here, the I.J. said there was no past persecution. Correct. And that's pretty hard to overturn. Agreed. Absolutely. So we're dealing with future, fear of future persecution. Yes. And here, I gather the argument is that, again, they didn't adequately, neither the I.J. nor the BIA adequately considered changed circumstances. In evaluating the objective reasonableness. Well, for the withholding rule claim, essentially it's that they did not apply the disfavored group analysis, which is. . . Well, the added group. Right, which is. . . Disfavored analysis. Right, which is what this Court held in Wakari. I mean, the Wakari case really is almost directly on point when you're talking about a case where ethnic Chinese in Indonesia saying that the BIA did not properly apply the disfavored group analysis to withholding of removal claim. And this Court said, first, withholding the disfavored group analysis does apply to withholding of removal. That had been a contested point in this case. Obviously, it's not contested anymore. The second thing is what happens when the BIA does not apply disfavored group analysis, and the answer is you must remand for them to apply it. Because, as the Supreme Court has said several times, as this Court has said many times, this Court does not address the proper legal test to the facts in the first instance. The proper course is to remand to the BIA. Under Ventura? Under Orlando Ventura. That's correct. And where did you discuss in your opening brief the standards for withholding or your withholding claim at all? In the, well, in the opening petitioner's brief, they did discuss the withholding, the standard for withholding of removal, that it was a well-founded fear for future persecution. And they asked for relief for withholding of removal. And, of course, all of their arguments, which the Respondent says apply to the asylum claim, apply equally to withholding of removal. It's a higher test, but essentially the same arguments to meet that test. When we appointed you, we allowed you in the same order to file the supplemental briefs? You allowed me to file the supplemental briefs, correct. By that same order appointing you? That's correct, yes. Okay. And that, your supplemental briefs make all those arguments? Yes. And the Respondent fully had a full opportunity to respond to those. I'd like to reserve the rest of my time for rebuttal. All right. Thank you. Good morning, Your Honors, and may it please the Court. My name is Patrick Glenn, appearing on behalf of Attorney General Eric Holder. Petitioners in this case filed their application for asylum in 2002, eight years after last arriving in the United States, and four years after that application would have been deemed timely. This application was based on minor incidents of harassment and discrimination and the generalized state of civil unrest in Indonesia. The immigration judge affirmed by the Board determined that this application was untimely and not excused by changed circumstances and additionally denied this application on its merits, finding that petitioners had failed. The BIA's statement of that contains absolutely no analysis. The IJ didn't consider changed circumstances at all. All he talked about was ignorance of the law is no excuse. And then the BIA says we agree that changed circumstances do not excuse the untimely filing. How can that be a ruling that we would even defer to? It sounds like they're talking about the wrong case, because how can they agree with something the IJ didn't do? Well, Your Honor, I think in this case there is a sufficient finding regarding the timeliness determination. The immigration. Circumstances determination in particular. Correct, Your Honor. I believe there is. I think there's a sufficient determination first regarding the reasonableness of the filing following alleged changed circumstances and also a determination regarding changed circumstances between 1998 and 2002. Tell me where you find a sufficient determination. I believe in the immigration judge's referral to the Department of Homeland Security's decision. The immigration judge expressing his opinion. Can you give me page site? I don't have the exact site, Your Honor. I believe it's about page 7 of the immigration judge's decision, 6 or 7. The immigration judge specifically references the Department of Homeland Security's Judge Kosinski just gave a talk the other day, Friday, to the State Bar of California and told them, have the page references. If it's a critical point, which it is, under SJAC, because that makes a distinction on our jurisdiction whether there was a determination made or there wasn't a determination made. So you really ought to have that for us to show that there was. So where? I apologize, Your Honor. I believe, again, page 7 of the immigration judge's decision. It would have been administrative record probably around page 130 or 131. Page 7 is 135. Right. Page 6 talks about credibility. And that's not clarifying. I don't know if he's saying that if he's making an adverse credibility determination. Are you talking about on page, I guess it's page 131 of the record, it says, I agree with DHS that the respondent should be deemed time-barred? Correct. So from that, we're to infer that he incorporated all of whatever it was they were arguing? I think the agreement. Is that what we're doing? I think it could lead to that conclusion, yes, Your Honor. But I think also in the context of this case that the timeliness. . . But do you think he ought to address it head-on? I think the immigration judge made a sufficient finding regarding that. But I think in the broader context of this case, the timeliness issue isn't determinative of the ultimate disposition of the petition because of the alternative merits determination. So regardless of the questions of whether this court has jurisdiction, regardless of the question of whether the agency made a proper finding, regardless of the timeliness determination, the agency's merits determination on the application for asylum is a sufficient basis on which to deny the instant petition for review. But you're relying on the DHS assessment. What in the DHS assessment are you relying on? Well, the Department of Homeland Security in the assessment, and I do have that page number for you, Your Honors, Administrative Record 198 through 199, assumes the existence of changed circumstances through 1998 and then determines that the petitioners did not file their application within a reasonable period of time following those changed circumstances and made a further determination that the petitioners failed to establish any changed circumstances between 1998 and the 2002 filing of their application. And so before this Court, it's those two determinations that a contrary conclusion is not compelled. Petitioners did not file within a reasonable period of time assuming changed circumstances in 1998, nor did they establish or proffer any evidence concerning changed circumstances between 1998 and 2002, which would excuse that four-year delay. But again, Your Honors, I think that the merits determination is sufficient on which to deny the instant petition for review because Even though there was no sale analysis? Yes, Your Honors. Sale and walkery are two decisions that occurred after the Board's decision in this case. So any claim under the disfavored group analysis is unexhausted before this Court. Why shouldn't we just remember if they didn't exist at the time, why don't we just send it back to the BIA and say, you know, take another look at her claim in light of sale and walkery? Because, Your Honor, petitioners do have administrative remedies available to them. They could file a motion to reopen or a motion to reconsider with the Board of Immigration Appeals specifically raising both sale and walkery. And those be untimely too? They would be ostensibly untimely, Your Honor, but there are exceptions to the timeliness requirements, which would at least arguably apply in this case, concerning especially the allegation that there has been a change in the law since the Board's underlying decision in this case. So although there are timeliness considerations in regards to this determination, that doesn't necessarily unexcuse the fact that these are unexhausted before the agency. Petitioners should go before the agency with a motion seeking to raise these issues in the first instance. That is of some concern to me because I understand there could be a reopen, a motion to reopen or other ways, but if it's going to be untimely in any event, and given what we had in front of us at this time, wouldn't it be in our better interest if we get this far to send it back for further reconsideration to make sure we don't miss giving the petitioner that chance to address those problems? Well, Your Honor, there's an exception. Because my worry is that he's got only so much time even to file those motions. Correct, Your Honor, but there is an explicit exception to the timeliness requirements concerning a motion to reopen seeking to apply or reapply for asylum. In this case, I think that would be the basis of any motion. Would it be change circumstances? No, Your Honor, but I think the change in the law would be a sufficient. Does that fit under extraordinary circumstances? Regarding which question, Your Honor? Timeliness issue. Well, the timeliness issue, so long the petitioners could file a motion to reopen or reconsider, and the reconsideration, a change in the law, would constitute a sufficient basis on which I don't want to talk for the Board specifically in these circumstances, but there are considerations in this case. But the Board has said that a change in the law would merit a reconsideration? Certainly, Your Honor. I don't know those exact cases. It does it frequently on unpublished decisions or on remands or those kind of considerations. But in this case, petitioner should have brought this claim to the agency in the first instance prior to any resolution. That's curious to me because usually if there's an intervening change in the law, whether it's the district court or the agency, and we find that the agency didn't have an opportunity to apply the correct law to the facts that were before it, we just remand so they can apply the correct law to those facts. We're not talking about change circumstances. We're not talking about factual determination here, which extraordinary circumstances or change circumstances would be. We're talking about a legal change that the BIA should have an opportunity to apply to the facts that are of record in the first instance. Well, still, Your Honor, the petitioner should go through a motion to reopen. That's an administrative remedy available to them as of right, and under Section 242 D.1, that should be the avenue of redress in this case. What law requires that? If we decide we have jurisdiction, what law would require us to say, we're just not going to exercise it because the petitioner has other avenues of relief? There's no specific law in that case that directly addresses that point, but the statute explicitly provides for a remedy for petitioners in this case, and that is through a motion to reopen or a motion to reconsider, filed with the board, raising these intervening cases, and that should be the avenue that they pursue here. But in any event, petitioners have never raised an argument remotely analogous to the disfavored group analysis at any point during the prior review. What was the state of the case law at the time the opening brief was filed in the BIA? Your Honor, at the time the brief was filed in the BIA, the low-long panel, I believe, was the prevailing law, and that was the initial argument made before the agency and before this Court. You mean low-long en banc decision or the low-long? The low-long panel was. The panel decision. And after the en banc decision, this Court did order the first round of supplemental briefing to address the merits of low-long. But petitioners claimed before the agency in the first instance and before this Court on the first set of briefing concentrated on the low-long ideal of the pattern and practice, the regulatory pattern and practice of persecution. And that's on the basis of this. You know, when I read the original brief that was filed in this case, it really left a lot to be desired. Petitioners, Your Honor? Yes. I don't want to impugn another attorney. Do you think that should in any way sort of affect how we look at the case? I don't think it should, Your Honor. This Court, as Petitioners' Counsel noted before the Court this morning, this Court does have precedent concerning when issues not necessarily raised in an initial brief may be deemed nonetheless raised when presented by amicus. I think there are avenues that this Court could utilize to get at some of the issues. But on the other hand, I don't think the appointment of amicus can necessarily cure all the defects in an underlying initial brief. So although the Court should certainly look at the distinct procedural posture of this case, whereby an amicus was appointed along with the initial counsel, I don't think that that changes any of the results in this case. And I think the correct result, again, is the denial of this petition based on the merits determination that petitioners cannot establish either past persecution or a well-founded fear of persecution. As Your Honor noted during Petitioner's presentation, the focus at this point is on the well-founded fear determination. And Petitioner's claim on this point is basically an undifferentiated claim to asylum based solely on an assertion of general This Court has consistently noted that this is not enough. Your Honors, I'm sorry, my time has expired. Thank you, counsel. Your Honor, I'd just like to make one point on the exhaustion issue, because I think there's been some confusion about what the law actually requires with respect to exhaustion. This Court in Alkiraz v. INS, which is 384 F. 3rd, 1150, said specifically that a petitioner, when there is new law, need not file a motion to reopen. Specifics that exhaustion is done if the legal issue comes after the case. The direct quote is, we do not require an alien to exhaust administrative remedies on legal issues based on events that occur after a briefing to the BIA has been completed. So there has been sufficient exhaustion here, and this Court should address the disfavored group issue and do so by remanding to the BIA to consider it in the first instance. That's on the withholding claim. That's on both the withholding and the asylum claim. Assuming the asylum requires to get over the timeliness bar, the withholding does not. All right. Thank you, counsel. And we appreciate very much your accepting the pro bono appointment and filing the briefs. Thank you very much. Okay. Coho v. Holder will be submitted.
judges: Wardlaw, Paez, N.R. Smith